Anderson, J.,
delivered the opinion of the court.
The court is of opinion that there is no error in the judgment. Johnson was promptly informed by his attorney, Bekem, of the payment made to him on the 5th of April 1862, in confederate money, upon his executions against Gibbons. Johnson admits that he made no reply to the letter of Mr. Bekem informing him of the payment; for which he assigns the very insufficient reason, that he had no authority to collect the debt for him. Mr. Bekem was an attorney at law, engaged in the practice of his profession in connection with Mr. Campbell, in the firm name of Bekem & Campbell, when they receipted to Mr. Johnson for the notes upon which they obtained the judgments for which the executions in question were issued. In their receipt they say: “Beceived of James M. Johnson, for collection, a note”—which they describe— also “another note”—which they describe—and conclude, “ on the above notes we are to bring suits, and prosecute them to judgment, and to have a'fee of $5 in each case,” &c. This last clause of the receipt seems to indicate that the undertaking of the attorneys was to prosecute the suits to judgment, for which their compensation is fixed; but it can hardly he construed as a revocation of the first clause, which authorizes them to collect, or of the general authority of an attorney to collect. Though it may he construed to relieve them from the obligation to collect, and from the corresponding compensation or commission for collecting, which it is probable was intended, it cannot be construed, we think, to deny to them the authority to collect, or to limit them to the function *636 of prosecuting the claims to judgment. And this view is confirmed by the fact, that a motion was prosecuted, by the same attorneys against the deputy sheriff, to a judgment for a fine of fifty dollars, for failing to return the executions.
If Johnson was really of opinion that Bekem had no authority to collect the money, he had reason to believe, from what has been narrated, and from his having actually received the money, that he considered he had authority to collect it; and so far from the fact of his belief that he had not, furnishing a reason or excuse for not replying to his letter, it made it the more incumbent on him to have promptly replied, and to have informed him that he did not acknowledge his authority to collect thé money, and that he did not approve of his receiving confederate money, and would not receive it from him. Mr. Justice Greer, of the supreme court of the United States, in Law v. Crop, 1 Black’s R. 539, says, speaking for the whole court: “When informed by his agent of what he had done, if the principal did not choose to affirm the act, it was his duty to give immediate information of his repudiation. He cannot, by holding his peace and apparent acquiescence have the benefit of the contract (in this case payment) if it should turn out to be profitable, and retain a right to repudiate it if otherwise. The principal must, therefore, when informed, reject within a reasonable time, or be deemed to adopt by. acquiescence.”
It does not appear that Bekem had ever received an intimation that his client did not wish him to collect the executions, or that he would not receive confederate money in payment. It was contended by the learned counsel for the plaintiff in error that Heiskell, the sheriff, was aware of it. If .he was, it is not pre *637 sumable that he would have communicated it to the attorney to whom he offered to pay it; nor can it be presumed that he communicated it to the debtor Gibbons, who swears that he had no notice that Mr. Bekem was not authorized to collect; and if Bekem had been thus restricted in. the general powers of an attorney, the debtor’s payment to him would not be invalidated unless he had notice of the restriction.
But was Heiskell, through whom the payment was made to Bekem, aware that Johnson was unwilling to receive confederate money at the time he made the payment in question ? It seems that about a year before, he informed Johnson that he had levied his executions upon cattle, and that unless he would attend the sale and bid on them, and make them bring about as much as they would have brought the fall before, under a law then in force, he could not make his money, when Johnson declined, and said he would take nothing but gold or coin for his debt. At that time confederate money was not in circulation, and he could not’have made the declaration with reference to it. And will Heiskill be held to have had notice from that casual conversation, twelve months afterwards, when confederate money was freely paid out and received by the banks and in all business transactions, and had become the almost exclusive circulating medium of the country, that Johnson was unwilling to receive payment of his debt in that currency, which it is known to the court that many persons then regarded as equal to coin as a medium of exchange? We think not. And after silently acquiescing in the payment made to his attorney, without an intimation to the defendant in error, to the contrary, so far as this record shows, from the 5th of April 1862, when it was *638 made, until the 19th of January 1874, when the executions in question were sued out, it would not be equitable nor reasonable, that he should be allowed to repudiate it now. Upon the whole, the court is of opinion to affirm the judgment of the circuit court.
Judgment appirmed.